**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3881
_____

UNITED STATES OF AMERICA

v.

PRINCE ISAAC,
a/k/a Connect
a/k/a Connetti
a/k/a Boo

Prince Isaac,
                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-05-cr-00576-001)
District Judge:  Honorable Juan R. Sanchez
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 21, 2015

Before: FUENTES, GREENAWAY, JR., and NYGAARD, *Circuit Judges*.

(Filed: September 30, 2015)
_____

OPINION[*]
_____

_____

  [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

FUENTES, *Circuit Judge*

Prince Isaac appeals the District Court's order denying his motion for a new trial based on newly discovered evidence.[1]  For the reasons that follow, we will affirm.

## I.

On November 17, 2008, Isaac was sentenced to life imprisonment for numerous federal offenses stemming from his involvement in a Pennsylvania drug-trafficking ring. Isaac's convictions included four counts of distribution of crack cocaine,[2] one count of conspiracy to distribute cocaine,[3] and one count of engaging in continuing criminal enterprise.[4]

Lindsay Colon, Isaac's former girlfriend, was one of the Government's main witnesses at trial, where she testified regarding her interactions with Isaac and his co-conspirator, Shamek Hynson.  Colon explained that she saw the two with weapons multiple times and witnessed Isaac sell crack cocaine, heroin, and marijuana.  Ultimately, Colon's testimony accounted for 85 of the 135.2 grams of crack cocaine and heroin

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. § 1291.  We "review a district court's ruling on a motion for a new trial on the basis of newly discovered evidence for abuse of discretion.  However, where, as here, the motion for a new trial is based on a *Brady* claim, which presents questions of law as well as questions of fact, we will conduct a de novo review of the district court's conclusions of law as well as a 'clearly erroneous' review of any findings of fact."  *United States v. Pelullo*, 399 F.3d 197, 202 (3d Cir. 2005) (internal citation and quotation marks omitted).

[2] 21 U.S.C. § 841(a)(1).

[3] 21 U.S.C. § 846.

[4] 21 U.S.C. § 848.

underlying Isaac's conspiracy charge, and supported Isaac's criminal enterprise conviction as well.

Of particular relevance, Colon also testified about a trip Isaac and Hynson made to South Carolina on October 14-18, 2004. According to Colon, Isaac left her with his cellphone and 28 grams of crack cocaine to sell on his behalf while he was away. Colon explained that she used Isaac's cellphone to sell 20 of the 28 grams, and this testimony ultimately served as the primary basis for one of Isaac's distribution of crack convictions (Count 5). Colon testified that Isaac's cellphone number was 717-203-3409, but never confirmed that Isaac had only one cellphone or that the cellphone he gave her used this number. At trial, the Government produced phone records ("Set 1") that showed the frequency, date, duration, and subscriber for each number dialed from 717-203-3409 from October 14-18, 2004. These records, however, provided no information about incoming calls.

Shanika Wilson, Hynson's former girlfriend, corroborated Colon's story about selling drugs for Isaac. Wilson testified that she and Colon sold ten, twenty, and fifty dollar packages of crack cocaine together while Isaac and Hynson were in South Carolina. Further, Wilson recalled that she and Colon had five or six customers per day during this time. Wilson, however, could not recall specific dates, quantities of drugs sold, or whether Isaac's cellphone was used to facilitate the sales.

In April 2009, Isaac filed a post-conviction motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. Isaac argued that the Government failed to

3

disclose four pieces of material evidence in violation of his due process rights under *Brady v. Maryland*.[5] Most relevant is a set of undisclosed phone records ("Set 2"), which indicate that none of the 165 incoming calls made to 717-203-3409 from October 14-18, 2004, were answered. The District Court found that the Government improperly suppressed the Set 2 phone records but ultimately denied Isaac's motion for a new trial because such evidence was immaterial to Isaac's convictions. We agree.

## II.

Under *Brady v. Maryland*, the Government must provide the defense with all exculpatory evidence and impeachment material that it possesses or could obtain through due diligence.[6] To establish a due process violation meriting a new trial under *Brady*, a defendant must prove that: "(1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment."[7] Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[8] A reasonable probability is "a probability sufficient to undermine confidence in the outcome."[9] Materiality, however, is not determined by a sufficiency of the evidence test, such that a defendant is not required to show "that disclosure . . . would

---

[5] 373 U.S. 83 (1963).

[6] *Brady* protects undisclosed impeachment evidence if "the reliability of a given witness [is] determinative of guilt or innocence." *Giglio v. United States*, 405 U.S. 150, 154 (1972) (internal quotation marks omitted); *Brady*, 373 U.S. at 87.

[7] *Pelullo*, 399 F.3d at 209 (quoting *United States v. Dixon*, 132 F.3d 192, 199 (5th Cir. 1997)).

[8] *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (internal quotation marks omitted).

[9] *United States v. Bagley*, 473 U.S. 667, 682 (1985).

have resulted . . . in the defendant's acquittal."[10]  Ultimately, we consider the cumulative effect of all undisclosed evidence rather than evaluating each piece individually.[11]

On appeal, Isaac's main argument is that the District Court erred in holding that the Set 2 records failed to satisfy the third prong of *Brady*.  The Government concedes that the Set 2 records were improperly suppressed and favorable to Isaac because the evidence could have been used to impeach Colon.  Therefore, the first two prongs of *Brady* are satisfied.  With respect to the third prong, Isaac maintains that the records were material to the outcome of his trial, particularly with respect to his Count 5 conviction for distribution of crack.[12]  According to Isaac, his Count 5 conviction was solely supported by Colon's testimony that she used Isaac's cellphone to sell 20 grams of crack while he was in South Carolina.  Because the Set 2 records suggest that Colon did not use Isaac's cellphone during his trip, Isaac contends that the undisclosed records contradict Colon's testimony and infect the entire trial.

Isaac's argument ignores the corroborative value of Shanika Wilson's testimony.  Wilson testified that she and Colon sold ten, twenty, and fifty dollar packages of crack

---

[10] *Kyles*, 514 U.S. at 434.

[11] *Id.* at 436-37.  Isaac also identified three additional pieces of undisclosed evidence: (1) investigation notes indicating that Colon had charges pending against her; (2) a signed version of Colon's witness statement; and (3) a Government memorandum stating that witness Tracy Ramirez was no longer cooperating with authorities.

[12] Isaac briefly argues that the cumulative effect of the Set 2 records plus the three additional pieces of undisclosed evidence constitute a *Brady* violation.  He does not describe the additional undisclosed evidence in detail, nor does he explain why it undermines confidence in any of his convictions.  In any event, we agree with the District Court that the cumulative effect of all undisclosed evidence was immaterial to the outcome of Isaac's trial and fails to meet the third prong of *Brady*.

while Isaac and Hynson were in South Carolina, and recalled having five or six customers per day during this time. Isaac questions Wilson's credibility because she did not know certain details about the sales, including who supplied Colon with the drugs and whether Isaac's cellphone was used in the process. Nevertheless, Wilson's testimony never contradicted Colon's story and corroborates Colon's account of selling drugs for Isaac between October 14 and October 18, 2004.[13] Due to the corroborative value of Wilson's testimony, we find it unlikely that the Set 2 records would have affected the outcome of Isaac's Count 5 conviction.

Isaac briefly argues the Set 2 records would have undermined the confidence in his other convictions as well, namely his conviction for participating in a criminal enterprise. Although many witnesses testified against Isaac, he argues that Colon's testimony was crucial because she had the most firsthand knowledge of his activities. According to Isaac, the Set 2 records would have weakened Colon's credibility as a whole, and all of her testimony would have been given less weight. Because numerous other witnesses testified against Isaac and corroborated Colon's stories, Colon's testimony, while important, was simply one of many to support this count.[14]

---

[13] Isaac maintains that the Set 2 records directly contradict Colon's testimony because she testified that his phone number was 717-203-3409. However, Colon never testified that Isaac had only one phone number, or that the phone she was given used this number. We agree with the District Court that although Set 2 shows that a cellphone associated with Isaac was not answered during his trip to South Carolina, the records "do[] not foreclose the possibility Colon sold drugs on his behalf during that time," and therefore would have been unlikely to impact the entire trial. App. 13.

[14] Other evidence supporting Isaac's convictions include: Deborah and Michael Sherr's testimony that they let Isaac borrow their car in exchange for crack; Tracy Ramirez's

6

Accordingly, the Set 2 records would not have diluted the confidence in Isaac's other convictions, including that for engaging in a criminal enterprise.[15]

## III.

Because the undisclosed phone records do not undermine confidence in any of Isaac's convictions, we find that there has been no *Brady* violation. Accordingly, we will affirm the District Court's order denying Isaac's motion for a new trial.

---

testimony about selling crack for Isaac; James Cuffie's testimony about being recruited by Isaac to sell drugs in Lancaster; Edward Cameron's testimony about being shot by Hynson who was in a car driven by Isaac; and Officer Gareth Lowe's testimony about arresting Isaac and Cuffie, who were in possession of drugs and cash at the time.

[15] Isaac argues that the District Court improperly applied a sufficiency of the evidence test when it considered other witnesses' testimony to decide whether the Set 2 records were material. As the Government points out, *Kyles* prohibits a sufficiency of the evidence test to decide materiality, but does not require the District Court to ignore the entire trial record in reaching its conclusion. 514 U.S. 419.